Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
23586 Calabasas Rd., Suite 105
Calabasas, CA 91302
Phone: 323-306-4234
tfriedman@ toddflaw.com
abacon@ toddflaw.com
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MELISSA FURMAN and ALEXANDER PHILIPSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SKOPOS FINANCIAL, LLC d/b/a REPRISE FINANCIAL; DOES 1-10 Inclusive**,**<br><br>Defendant. | **Case No.: 2:25-cv-03080-TLN**<br><br>**CLASS ACTION**<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, et seq.**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. MELISSA FURMAN ("Plaintiff FURMAN") and Alexander Phillipson ("Plaintiff PHILLIPSON) bring this class action for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of SKOPOS FINANCIAL, LLC ("Defendant"), in negligently and intentionally contacting Plaintiffs on Plaintiffs' cellular telephones, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"), thereby invading Plaintiffs' privacy. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other

matters, upon information and belief, including investigation conducted by their attorneys.

2. The TCPA was designed to prevent calls and messages like the ones described within this complaint, and to protect the privacy of citizens like Plaintiffs. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

3. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls and messages are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at* 4 (N.D.Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

4. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." Id. at §§ 12-13. See also, *Mims*, 132 S. Ct. at 744.

5. As Judge Easterbrook of the Seventh Circuit recently explained in a

TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act … is well known for its provisions limiting junk-fax transmissions. A less-litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered—and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

6. The Ninth Circuit recently affirmed certification of a TCPA class case remarkably similar to this one in *Meyer v. Portfolio Recovery Associates, LLC*, __ F.3d__, 2012 WL 4840814 (9th Cir. Oct. 12, 2012).

**JURISDICTION AND VENUE**

7. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*. ("TCPA")

8. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiffs seek relief on behalf of a Class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiffs also seek $1,500.00 in damages for each call in violation of the TCPA, which, when aggregated among a proposed class in the thousands, exceeds the $5,000,000.00 threshold for federal court jurisdiction. Therefore, both diversity jurisdiction and the damages threshold under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

9. Venue is proper in the United States District Court for the Central District of California pursuant to 18 U.S.C. § 1391(b) and 1441(a) because Defendant is subject to personal jurisdiction in the County of Los Angeles, State of California.

## PARTIES

10.Plaintiff FURMAN is, and at all times mentioned herein was, a citizen and resident of the State of California. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

11.Plaintiff PHILLIPSON is, and at all times mentioned herein was, a citizen and resident of the State of Georgia. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

12. Defendant Skopos Financial LLC is a Delaware limited liability company, and is principally located in Irving, Texas. Defendant, is and at all times mentioned herein were "persons," as defined by 47 U.S.C. § 153 (39). Defendant claims to provide loans. Plaintiffs allege that at all times relevant herein Defendant conducted business in the State of California and in the County of Los Angeles, and within this judicial district.

## FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF FURMAN

13. On or about April of 2025, Plaintiff received a text message from Defendant on her cellular telephone, number ending in -6577

14. During this time, Defendant began to use Plaintiff's cellular telephone for the purpose of sending Plaintiff spam advertisements and/or promotional offers, via text messages, including text messages sent to and received by Plaintiff on the following dates in 2025: April 13, April 14, April 17, April 21, and April 24, 2025.

15. Plaintiff, upon receipt of the first message on April 13, 2025, responded to Defendant's text message notification by replying "Stop".

16. At that point, Plaintiff had withdrawn any consent Defendant might have believed Defendant had prior to that point. Moreover, Plaintiff did not re-consent to receive solicitation prerecorded voice calls or text messages after opting out on April 13th.

17. Despite Plaintiff's responses, Defendant continues to send unwanted text messages to Plaintiff.

18. Plaintiff never consented to receive prerecorded voice calls from Defendant and/or revoked any consent she may have provided, and did not re-consent after opting out.

19. These text messages placed to Plaintiff's cellular telephone were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227 (a)(1) as prohibited by 47 U.S.C. § 227 (b)(1)(A).

20. These text messages constituted texts that were not for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i).

21. These text messages by Defendant, or its agents, violated 47 U.S.C. § 227(b)(1).

22. In addition to receiving text messages, Plaintiff was called repeatedly after revoking her consent to be contacted.

23. Specifically, Plaintiff received multiple prerecorded voice calls from Defendant on April 14, 17, 21, 24, 27, and 30, 2025. Each prerecorded call stated:

> Hi
> This is reprise financial. We are calling to follow up on your recent request. We need some additional information from you. Please log on to our website at www.reprisefinancial.com to upload additional document and view important updates about your request.

24. Upon information and belief, at all relevant times, Defendant failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5).

25. Defendant contacted or attempted to contact Plaintiff from numerous telephone numbers and frequently left 855-682-0740 as a call back number.

26. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

27. Such calls constitute solicitation calls pursuant to 47 C.F.R. § 64.1200(c)(2), as they were an attempt to promote or sell Defendant's services.

28. Plaintiff has received numerous solicitation calls from Defendant within a 12-month period.

### FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF PHILLIPSON

29. Commencing on or about December 9, 2024, Defendant sent multiple text messages to Plaintiff's cellular telephone number ending in 9369 ("9369 Number") *after* Plaintiff's requests for the messages to "Stop" as depicted below:









30. Plaintiff complied with Defendant's opt-out instructions and responded with the word "Stop "on December 9, 2024, but Defendant continued to send text messages to Plaintiff on December 9, 2024, December 13, 2024, and December 15, 2024.

31. As depicted above, Defendant immediately acknowledged receipt of Plaintiff's opt-out request, and confirmed that Plaintiff was opted out of its text messages.

32. Given Defendant's use of an automated text messaging platform, as reflected by the auto-reply opt-out confirmation Plaintiff received, Defendant had the ability to immediately opt Plaintiff out of further communications but chose not to do so. Accordingly, it was unreasonable for Defendant to continue texting Plaintiff given its ability to immediately opt Plaintiff out and its representation that Plaintiff had been opted out of further communications.

33. Plaintiff did not opt back into Defendant's text messages after opting out.

34. Plaintiff is the regular user of the 9369 Number and is financially responsible for phone service to the 9369 Number.

35. Plaintiff utilizes the 9369 Number as his residential telephone line and there is no other way to reach Plaintiff via telephone when Plaintiff is at home

## FACTUAL ALLEGATIONS COMMON TO ALL PLAINTIFFS

36. The purpose of Defendant's text messages and prerecorded calls was to encourage Plaintiffs to obtain a personal loan from Defendant and for which Defendant would have charged Plaintiffs a 6% loan origination fee.

37. Each text message and call sent by Defendant to Plaintiffs identified Defendant by name and included a hyperlink directing Plaintiffs to Defendant's website, where Defendant promotes and sells its loan products.

38. Defendant owns and utilizes the above identified short-code telephone number (90699) to physically transmit text messages to consumers, including the above messages sent to Plaintiffs. Defendant also owns and utilizes the telephone numbers that placed the above alleged prerecorded voice calls.

39. As demonstrated by the above screenshots, Defendant does not honor consumer requests to opt-out of solicitations. Indeed, Plaintiffs attempted to opt-out of Defendant's solicitations by telling Defendant not to contact them anymore, but Defendant continued to text message and/or call Plaintiffs intentionally disregarding Plaintiffs' instructions in order to solicit the sale of its loan products to Plaintiffs.

40. Defendant's refusal to honor Plaintiffs' opt-out requests demonstrates that Defendant had not instituted adequate procedures for maintaining a list of persons who request not to receive text messages from Defendant that satisfy the minimum requirements of section 64.1200(d).

41. Defendant did not maintain the required procedures for handling and processing opt-out requests prior to the initiation of the violative text messages it sent to Plaintiffs as reflected by the fact that Plaintiffs made an opt-out request and those requests were never processed; they were ignored by Defendant and its

employees and Defendant continued to send text messages and prerecorded calls to make a sale.

42. Plaintiffs are not the only consumer that have been harassed by Defendant. At least two other consumers have filed lawsuits based on Defendant's transmission of similar text message solicitations. *See Wilson v. Skopos Fin., LLC*, Case No. 6:25-cv-00376-MC (D. Or. 2025); *Brown v. Skopos Fin., LLC*, Case No. 8:24-cv-01297-SDM (M.D. Fla. 2024). Moreover, at least one consumer filed a complaint with the Better Business Bureau regarding Defendant's relentless solicitations:

> I kept telling the representative to let me think about this personal loan and I will get back with them. They pursued me on my email and text messages. During this particular time frame, I as off my mental health medications for 4 months and I was not thinking clearly nor able to enter into a binding agreement with no one. They pursued me so much that I let my cousin start talking to them on my behalf because they were giving me anxiety and stressing me out.

www.bbb.org/us/tx/irving/profile/financial-services/skoposfinancial-llc-0875-90524659/complaints

43. Defendant sent at least two solicitations after Plaintiffs' initial opt-out requests.

44. To text message Plaintiffs and the Class members, Defendant utilized an "automated telephone dialing system" as Defendant openly admits on its website. *See* www.skoposfinancial.com/terms-and-conditions.

45. The "automated telephone dialing system" utilized by Defendant to text message Plaintiff and the Class members has the capacity to store telephone numbers to be called using a random or sequential number generator and to dial such numbers.

46. Defendant maintains and/or has access to outbound and inbound transmission reports for all text messages and calls sent to and received from Plaintiffs and the Class members. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members.

47. Defendant's failure to (1) maintain the required written policies and procedures, (2) provide training to its personnel engaged in telemarketing, (3) maintain a do-not-call list, and (4) honor consumer opt-out requests caused Plaintiffs and the Class members harm as they continued to receive text messages and calls after asking for those messages to stop.

48. To the extent that Defendant had consent to contact Plaintiffs, that consent was expressly revoked when Plaintiffs responded "Stop".

49. Defendant's text messages and calls caused Plaintiffs and the Class members harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights

## CLASS ACTION ALLEGATIONS

50. Plaintiffs bring this action on behalf of themselves and on behalf of and all others similarly situated ("the Class") defined as follows:

> **<u>IDNC CLASS</u>: All persons within the United States who, during the four years prior to the filing of this lawsuit through the date of class certification, received two or more calls and/or text messages within any 12-month period, requesting that they visit Defendant's website to complete a loan application, to said person's residential cellular telephone number, after communicating to Defendant that they did not wish to receive text messages by replying to the messages with a "stop" or similar opt-out instruction, and who did not opt back into Defendant's text messages after they opted out.**

**<u>ATDS CLASS</u>: All persons within the United States who, during the four years prior to the filing of this lawsuit through the date of class certification, received one or more text messages, sent utilizing the same text messaging software utilized to message Plaintiff, requesting that they visit Defendant's website to complete a loan application, to said person's cellular telephone number, after communicating to Defendant that they did not wish to receive text messages by replying to the messages with a "stop" or similar opt-out instruction, and who did not opt back into Defendant's text messages after they opted out.**

**<u>PRERECORDED CLASS</u>: All persons within the United States who, during the four years prior to the filing of this lawsuit through the date of class certification, received one or more prerecorded voice calls from Defendant on their cellular telephone consisting of the following or similar message requesting a return call to Defendant: "Hi. This is reprise financial. We are calling to follow up on your recent request. We need some additional information from you. Please log on to our website at www.reprisefinancial.com to upload additional document and view important updates about your request."**

51. Defendant and their employees or agents are excluded from the Class. Plaintiffs are informed and believe that the Class members number in the thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

52. Plaintiffs and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through their agents, illegally contacted Plaintiffs and the Class members via their cellular telephones by using marketing calls and text messages, thereby causing Plaintiffs

and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid, and invading the privacy of Plaintiffs and the Class members. Plaintiffs and the Class members were damaged thereby.

53. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiffs reserve the right to expand the Class definitions to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

54. The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court. The Class can be identified through Defendant's records or Defendant's agents' records.

55. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect individual Class members, including the following:

a) Whether, within the four years prior to the filing of this Complaint, Defendant or their agents sent any text messages or calls (other than a message made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automatic dialing system to any telephone number assigned to a cellular phone service;
b) Whether Defendant complied with the requirements of the TCPA's implementing regulations;
c) Whether Defendant continued to solicit Plaintiffs and the Class Members after they asked Defendant to cease its solicitations;
d) Whether the purpose of Defendant's calls and messages was to solicit the sale of its services;
e) Whether Plaintiffs and the Class members were damaged thereby, and the extent of damages for such violation; and
f) Whether Defendant and their agents should be enjoined from engaging in such conduct in the future.

56. As persons that received marketing calls and text messages without prior express consent, Plaintiffs are asserting claims that are typical of the Class. Plaintiffs will fairly and adequately represent and protect the interests of the Class in that Plaintiffs havse no interests antagonistic to any member of the Class.

57. Plaintiffs and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

58. Plaintiffs have retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

59. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal and California law. The interest of Class members in individually controlling the prosecution of separate claims against Defendant are small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

60. Defendant have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION
## VIOLATION OF 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)
## (ON BEHALF OF PLAINTIFFS AND THE IDNC CLASS)

61. Plaintiffs re-allege and incorporate the foregoing allegations set forth in paragraphs 1 through 60 as if fully set forth herein.

62. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) *Written policy*. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) *Training of personnel engaged in telemarketing*. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party

other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

63. Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity that sends telemarketing texts to wireless telephone numbers.

64. Plaintiffs and the Class Members are residential telephone subscribers who received more than one telemarketing call and/or message from Defendant.

65. When it called and messaged Plaintiffs and the IDNC Class members, Defendant had not implemented the policies or procedures required under 64.1200(d). This is plainly a violation of 64.1200(d).

66. Plaintiffs and the IDNC Class members made requests to Defendant to not receive calls and texts from Defendant.

67. Plaintiffs and the IDNC Class Members revoked any consent they may have provided Defendant by responding with "stop" or similar opt-out instructions.

68. Defendant continued to call and message Plaintiffs and the IDNC Class Members to harass them into entering into loan agreements with Defendant, and for which Defendant would have charged Plaintiff and the IDNC Class members origination fees.

69. Defendant failed to honor Plaintiffs' and the IDNC Class members' opt-out requests.

70. In violation of section 64.1200(d)(1), Defendant had no policy for maintaining a do-not-call list when it solicited Plaintiffs and the IDNC Class members.

71. In violation of section 64.1200(d)(2), Defendant did not train its personnel engaged in telemarketing on the existence and use of a do-not-call-list when it solicited Plaintiffs and the IDNC Class members because it had no internal do-not-call policy or list.

72. In violation of section 64.1200(d)(3), Defendant failed to record Plaintiffs' and the IDNC Class Members' opt-out requests on a do-not-call list, and failed to honor Plaintiffs' and the IDNC Class Members' do-not-call requests within a reasonable time.

73. In violation of section 64.1200(d)(6), Defendant did not maintain a record of consumers' inbound "stop" text message requests to not receive solicitations, and did not honor those requests, when it text messaged Plaintiffs and the IDNC Class members.

74. Pursuant to section 227(c)(5) of the TCPA, Plaintiffs and the IDNC Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

**SECOND CAUSE OF ACTION**
**VIOLATION OF 47 U.S.C. § 227(b)**
**(ON BEHALF OF PLAINTIFFS AND THE ATDS CLASS)**

75. Plaintiffs re-allege and incorporate the foregoing allegations set forth in paragraphs 1 through 60 as if fully set forth herein.

76. The TCPA prohibits (1) any person from text messaging a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

77. In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

78. As it admits on its website, Defendant utilized an "automated telephone dialing system" to text message Plaintiff and the ATDS Class members. *See* www.skoposfinancial.com/terms-and-conditions.

79. The "automated telephone dialing system" utilized by Defendant to text message Plaintiffs and the Class members has the capacity to store telephone numbers to be called using a random or sequential number generator and to dial such numbers.

80. Plaintiffs and the ATDS Class members made requests to Defendant to not receive texts from Defendant.

81. Plaintiffs and the ATDS Class Members revoked any consent they may have provided Defendant by responding with "stop" or similar opt-out instructions.

82. Defendant sent automated text messages to Plaintiffs and the ATDS Class Members without their express consent.

83. Defendant violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to send non-emergency text messages to the cell phones of Plaintiffs and ATDS Class members without their prior express consent.

84. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiffs and ATDS Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.

**THIRD CAUSE OF ACTION**

**VIOLATION OF 47 U.S.C. § 227(b)**

**(ON BEHALF OF PLAINTIFF FURMAN AND THE PRERECORDED CLASS)**

85. Plaintiff re-alleges and incorporate the foregoing allegations set forth in paragraphs 1 through 60 as if fully set forth herein.

86. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any …artificial or prerecorded voice to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

87. It is a violation of the TCPA regulations promulgated by the FCC to "initiate any telephone call…using an… artificial or prerecorded voice to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 C.F.R. § 64.1200(a)(1)(iii).

88. Additionally, it is a violation of the TCPA regulations promulgated by the FCC to "[i]nitiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, …artificial or prerecorded voice …other than a call made with the prior express written consent of the called party or the prior express consent of the called party when the call is made…" 47 C.F.R. § 64.1200(a)(2).

89. Defendant used prerecorded messages to make non-emergency telephone calls to the cellular telephones of Plaintiff and other members of the Class.

90. Defendant did not have prior express consent to call the telephones of Plaintiff and the other members of the putative Class when its calls were made.

91. Defendant has, therefore, violated §§ 227(b)(1)(A)(iii), 64.1200(a)(1)(iii), and 64.1200(a)(2) by using prerecorded messages to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the putative Class without their consent.

92. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the members of the Class are also entitled to an injunction against future calls. *Id.*

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request the Court grant Plaintiffs and the

Class members the following relief against Defendant:

a) An order certifying this case as a class action on behalf of each Class defined above, and appointing Plaintiffs as the representatives of the Class and Plaintiffs' counsel as Class Counsel;
b) An award of statutory damages for Plaintiffs and each member of the Class as applicable under the TCPA; and
c) Such further and other relief as the Court deems necessary.

**TRIAL BY JURY**

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiffs are entitled to, and demand, a trial by jury.

Dated: March 6, 2026

Respectfully submitted,

**THE LAW OFFICES OF TODD M. FRIEDMAN, P.C.**

By: /s/ Todd M. Friedman
TODD M .FRIDMAN, ESQ.
ATTORNEY FOR PLAINTIFF

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo
Florida Bar No. 030380
*Pro hac vice*
401 E. Las Olas Blvd., Ste. 1400
Fort Lauderdale, FL 33301
mhiraldo@hiraldolaw.com
305.336.7466
ATTORNEY FOR PLAINTIFF