JUSTIN PENN (SBN CA 302350)
jpenn@hinshawlaw.com
SARA E. FRANKS (SBN 345940)
sfranks@hinshawlaw.com
HINSHAW & CULBERTSON LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
Telephone: 213-680-2800
Facsimile: 213-614-7399

Attorneys for Defendant,
SKOPOS FINANCIAL, LLC DBA REPRISE FINANCIAL

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MELISSA FURMAN and ALEXANDER PHILIPSON, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SKOPOS FINANCIAL, LLC d/b/a REPRISE FINANCIAL; DOES 1-10 Inclusive,<br><br>Defendants. | Case No.: 2:25-cv-03080-TLN-DMC<br><br>**DEFENDANT SKOPOS FINANCIAL, LLC DBA REPRISE FINANCIAL'S REPLY IN RESPONSE TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Action Filed: October 23, 2025<br>Trial Date: NA |

Defendant Skopos Financial, LLC dba Reprise Financial ("Defendant" or "Reprise") hereby submits the following Reply in Response to Plaintiffs Melissa Furman and Alexander Philipson's (collectively, the "Plaintiffs") Opposition to Defendant's Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint ("SAC").

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In a futile endeavor to support their allegations that the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et. seq*. ("TCPA") and 47 C.F.R. § 64.1200(d) are applicable here, Plaintiffs attempt to re-write the communications sent by Reprise to squeeze them into the definition of telemarketing or telephone solicitation. Plaintiffs' attempt to do so fails. The communications at issue in the SAC are not the "dual purpose" calls that Plaintiffs spend the plurality of their Opposition describing. To the contrary, there was only one, singular purpose for the communications at issue – to follow-up to complete Plaintiffs' applications through Reprise, applications that Plaintiffs do not dispute **they** initiated. There is no hidden meaning and no different, second message where Reprise attempted to market or sell its goods or services.

What Plaintiffs attempt to ignore and brush over is the fact that **they** initiated the business relationship between Plaintiffs and Reprise. Reprise would not have contacted Plaintiffs without Plaintiffs' initial contact. Reprise did not seek Plaintiffs out. Reprise did not randomly select Plaintiffs to communicate with them. Rather, Plaintiffs provided their telephone numbers to Reprise and gave it the means to contact Plaintiffs. The communications were follow-up communications to persons who first asked for these communications to occur. The communications at issue in the SAC are not telemarketing or telephone solicitations subject to the TCPA. Plaintiffs' conclusory allegations that the communications are subject to the TCPA need not be taken as true when the documents incorporated by reference into the SAC, and Plaintiffs' own allegations, plainly prove otherwise. Plaintiffs' SAC should be dismissed without leave to amend.

Plaintiffs' SAC should further be dismissed without leave to amend because, even if the communications at issue were subject to the TCPA, which they are not, the claims made by Mr. Philipson and Ms. Furman separately fail as a matter of law. Reprise ceased communicating with Mr. Philipson within a reasonable time period and Ms. Furman re-opted into receiving communications from Reprise after her initial opt-out notice negating any alleged prior revocation of consent. Both of these circumstances are fatal to Plaintiffs' claims.

///

Reprise respectfully requests that this Court dismiss Plaintiffs' SAC with prejudice and without leave to amend.

## II. LEGAL ARGUMENT

### A. *The Calls and Messages Were Not "Dual Purpose" Calls and Do Not Constitute "Telemarketing" or "Telephone Solicitations" Subject to the TCPA.*

Plaintiffs do not attempt to distinguish the cases cited by Reprise in its Motion which describe the types of communications which are not subject to the TCPA; communications which are indisputably similar to the communications here.[1] Instead, Plaintiffs try to twist Reprise's communications and fabricate a second, hidden purpose of Reprise's communications to attempt to resuscitate their drowning causes of action. However, the text of the communications themselves, as stated in the SAC [SAC, ¶ 29] and as set forth in Reprise's records, disprove Plaintiffs' argument that the communications at issue were "dual purpose" communications which may be subject to the TCPA. They were not.

In making their argument, Plaintiffs rely heavily on the ruling in *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913 (9th Cir. 2012). But *Chesbro* is easily distinguishable from this case. In *Chesbro*, the plaintiff received two different phone calls from Best Buy regarding its Reward Zone Program ("RZP"). In finding that the calls were subject to TCPA, *Chesbro* held that:

> The robot-calls urged the listener to "redeem" his Reward Zone points, directed him to a website where he could further engage with the RZP, and thanked him for "shopping at Best Buy." Redeeming Reward Zone points required going to a Best Buy store and making further purchases of Best Buy's goods. There was no other use for the Reward Zone points. Thus, the calls encouraged the listener to make future purchases at Best Buy.

*Id.* at 918.

---

[1] Plaintiffs Opposition does not contain citations to *Smith v. Blue Shield of California Life & Health Ins. Co.* ("*Smith*"), 228 F. Supp. 3d 1056 (C.D. Cal. 2017), *Vallianos v. Schultz*, 2019 U.S. Dist. LEXIS 174729 (W.D. Wash., Oct. 8, 2019), *Daniel v. Five Stars Loyalty, Inc.*, 2015 U.S. Dist. LEXIS 159007 (N.D. Cal. Nov. 24, 2015), *Aderhold v. car2go N.A., LLC,* 2014 U.S. Dist. LEXIS 26320 (W.D. Wash. Feb. 27, 2014) affirmed by *Aderhold v. car2go N.A. LLC*, 668 Fed. Appx. 795 (9th Cir. 2016) or *Wick v. Twilio Inc.*, 2016 U.S. Dist. LEXIS 151482 (W.D. Wash. Nov. 1, 2016) each of which Reprise cites in its Motion in support of its argument that the communications here are not telephone solicitations subject to the TCPA. [Motion, § IV(A).]

*Chesbro* additionally held that "[b]ecause the calls encouraged recipients to engage in future purchasing activity, they also constituted telemarketing" and stated "[i]n sum, these calls were aimed at encouraging listeners to engage in future commercial transactions with Best Buy to purchase its goods." *Id.* at 918, 919. Unlike the messages in *Chesbro*, here the text messages and phone calls at issue from Reprise did **not** encourage any future purchase. The text messages from Reprise stated:

> Hi! This is Mark with Reprise Financial. We are working on your application, but we need more info from you. Please log in at RepriseFinancial.com to upload the missing documents. Questions, please call us at 877.505.6780. TXT STOP to Stop messages from this number. MSG & Data rates may apply.
>
> Hi! This is Mark with Reprise Financial. We are working on your application, but we need more info from you. Please log in at RepriseFinancial.com to upload the missing documents. If you have any questions, please call us at 877.505.6780. TXT STOP to Stop messages from this number. MSG & Data rates may apply.

[Hogan Decl. ¶ 7, Ex. 2; SAC, ¶ 29.] The phone calls to Ms. Furman stated:

> Hi
> This is reprise financial. We are calling to follow up on your recent request. We need some additional information from you. Please log on to our website at www.reprisefinancial.com to upload additional document and view important updates about your request.

[Hogan Decl., ¶¶ 8-9.]

Unlike in *Chesbro*, following the instructions provided by Reprise did not require Plaintiffs to purchase anything from Reprise. The text messages and calls were simply reminders to Plaintiffs to complete an application through Reprise from which a loan offer **may** be made. They did not encourage Plaintiffs to actually accept a loan offer – no offer had been made or could have been made because the application was incomplete. If an offer was made, Plaintiffs would then be free to either accept of decline the loan offer provided through Reprise. But, the fact that a loan may have resulted from the communications is irrelevant when the communications themselves did not encourage a loan, an offer for which did not even exist, to be accepted. *Chesbro* is not controlling here.

As stated above, Plaintiffs do not even try to distinguish the multiple cases cited by Reprise in its Motion, cases decided after *Chesbro*, which establish that "messages 'whose purpose is to facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter into

///

with the sender are not advertisements'" subject to the TCPA. *Smith v. Blue Shield of California Life & Health Ins. Co.* ("*Smith*"), 228 F. Supp. 3d 1056, 1065-66 (C.D. Cal. 2017) (internal citations omitted). This is because Plaintiffs cannot draw any distinction between these cases and this case.

The communications at issue in *Smith*, *Vallianos v. Schultz*, *Daniel v. Five Stars Loyalty, Inc.*, *Aderhold v. car2go N.A., LLC*, and *Wick v. Twilio Inc.* are substantively similar to Reprise's communications here and no dual purpose was found in any of these communications. For instance, in *Smith*, the following communication was at issue:

> Hello.
> This is an important message from Blue Shield of California. It's time to review your 2016 health plan options and see what's new.
> Earlier this month, we mailed you information about your 2016 plan and benefit changes. It compares your current health plan to other options from Blue Shield. You can also find out more online at blueshieldca.com . If you have not received your information packet in the mail, or if you have any questions, please call the number on the back of your member ID card.
> Thank you.
> Goodbye.

*Smith,* 228 F. Supp at 1058-59.

In *Vallianos*, the following communications were at issue:

> Howard Schultz will be speaking in Miami at 12:30! Watch live: https://hs.media.mi-a030[.]
>
> Howard Schultz will be speaking about his vision for America in Miami at 12:30! Watch live: https://hs.media/mia030[.]

*Vallianos v. Schultz*, 2019 U.S. Dist. LEXIS 174729 at *2-3 (W.D. Wash., Oct. 8, 2019).

In *Vallianos*, plaintiffs argued that the text messages were solicitations to purchase defendant's book. *Id.* at *6-7. The *Vallianos* court disagreed even though the link provided led to a webpage where defendant's book could be purchased and found that the text messages themselves said nothing about purchasing the book and, thus, were not subject to the TCPA. *Id.* at *8-10. Significantly, the court held "the mere inclusion of a link to a website on which a consumer can purchase a product does not transform the whole communication into a solicitation." *Id.* at *9-10. Nor does the inclusion of a link which may eventually result in a loan provided through Reprise transform a communication simply facilitating completion of an application into a solicitation here. *Id.*

///

In *Daniel v. Five Stars Loyalty, Inc.*, the communication stated "[w]elcome to Five Stars, the rewards program of Flame Broiler. Reply with your email to finish registering and get free pts! Txt STOP to unsubscribe." *Daniel v. Five Stars Loyalty, Inc.*, 2015 U.S. Dist. LEXIS 159007 at * 3 (N.D. Cal. Nov. 24, 2015). The *Daniel* court found that "a text sent solely for the purpose of allowing the recipient to complete a registration process that he or she initiated shortly before receiving the text is not telemarketing within the meaning of 47 C.F.R. § 64.1200(f)(12)." *Id.* at * 10. In fact, the *Daniel* court rejected the same argument Plaintiffs make here regarding a dual, hidden purpose to the communications and held:

> To the extent that it could be reasonably inferred based on context or otherwise that the text's purpose was also to 'encourage future purchases at Flame Broiler,' that purpose is simply too attenuated to make the text telemarketing within the meaning of 47 C.F.R. § 64.1200(f)(12). Certainly, the text was designed to allow Daniel to complete the registration process, which could result in an increase in the chances of Daniel making future purchases at Flame Broiler or other participants in the Five Stars program. But Daniel cites no authority indicating that this degree of connection between communication and purchase is sufficient to transform a text of the sort he received into a telemarketing message.

*Id.* at *12.

Similarly, in *Aderhold v. car2go N.A., LLC,* the subject text message which stated "[p]lease enter your car2go activation code 145858 into the emailed link. We look forward to welcoming you to car2go" was found not to be telemarketing under the TCPA. *Aderhold v. car2go N.A., LLC*, 2014 U.S. Dist. LEXIS 26320 at *25-26 (W.D. Wash. Feb. 27, 2014) affirmed by *Aderhold v. car2go N.A. LLC*, 668 Fed. Appx. 795 (9th Cir. 2016). The court found "no indication that the text was intended for anything other than the limited purpose stated in its two sentences: to permit Mr. Aderhold to complete registration" and that "[i]t is manifestly insufficient that Mr. Aderhold could, after choices of his own making, divert himself from the registration process to car2go marketing." *Id.*

And, in *Wick,* where the message at issue stated "Noah, Your order at Crevalor is incomplete and about to expire. Complete your order by visiting http//hlth.co/xDoXEZ," the court held that the communications were not telemarketing because they "simply reminded [plaintiff] how to complete the order process that he had initiated," "the text and call received by plaintiff were also related solely

///

to the consumer transaction he had initiated," and "[i]t is not telemarketing for the service or product provider to inform plaintiff how to complete [an order] process." *Wick v. Twilio Inc.*, 2016 U.S. Dist. LEXIS 151482 at *7-11 (W.D. Wash. Nov. 1, 2016).

What all of these communications have in common, and what they also have in common with the communications at issue here, is that they have a single, clear purpose related to one transaction. Reprise only requested that Plaintiffs go to its website to complete applications which Plaintiffs initiated themselves. That the application could possibly result in a loan offer in the future if Plaintiffs completed their applications (which Plaintiffs could choose to accept or decline) is irrelevant because having Plaintiffs accept a loan (an offer for which did not exist and may never exist) was not the plain purpose of the communication. Common sense dictates that Reprise's communications were not telemarketing or telephone solicitations but communications such as those in *Smith*, *Vallianos*, *Daniel*, *Aderhold*, and *Wick* which were sent for the sole purpose of completing a commercial transaction Plaintiffs initiated. Plaintiffs' dual purpose argument has already been rejected by courts in the Ninth Circuit and also fails here.

Finally, Plaintiffs' attempt to use the holdings in *Wilson v. Skopos Fin., LLC* to demonstrate liability here fails because the basic facts of *Wilson* and this action are inapposite. In both the *Wilson* holdings cited by Plaintiffs, the driving factor behind the court's decisions is that the plaintiff never initiated the application process with Reprise. This is not the case here. At no point do Plaintiffs allege or argue that they did not initiate the application process with Reprise or that their phone numbers were falsely or erroneously provided to Reprise. In making its ruling on defendant's motion to dismiss, the *Wilson* court held that defendant's argument "relies implicitly on the recipient's consent to convert an otherwise solicitous messages into a 'purely informational' message" and that, because there was no relationship between Wilson and defendant, that "the natural inference is that Defendant sent the messages to Plaintiff's phone number, pretextually referencing a loan application in order to promote its loan services to Plaintiff." *Wilson v. Skopos Fin., LLC*, 2025 U.S. Dist. LEXIS 138638 at *7-8 (D. Oreg. July 21, 2025). Thus, it was the lack of prior relationship which converted the messages from informational to potentially solicitous. In issuing its holding on defendant's motion for summary

///

judgment, the court found a fact-finder "could reasonably conclude that Defendant purchased Brian's information from LendingTree and sent the messages to encourage him to take out a loan with Reprise." *Wilson v. Skopos Fin., LLC*, 2026 U.S. Dist. LEXIS 61802 at * 9 (D. Oreg. Mar. 24, 2026). But, Plaintiffs make no such contention here. Again, Plaintiffs do not allege that they did not voluntarily provide their information to Reprise. The factual circumstances which led to the holdings Plaintiffs erroneously rely on in *Wilson* simply do not exist here.

As the content of the calls and messages make clear, Reprise communicated with Plaintiffs for a single purpose – to ask them to complete applications that they initiated. There was no dual, hidden purpose to the communications. Reprise did not advertise goods or services for purchase or rental to Plaintiffs, nor could it have based upon the incomplete applications, and therefore the subject communications are not "telemarketing" or "telephone solicitations" subject to the TCPA. Accordingly, Plaintiffs' SAC fails to state a cause of action for which relief can be granted to Plaintiffs and should be dismissed without leave to amend.

**B. *Whether Reprise Ceased Communications with Mr. Philipson Can be Decided on a Motion to Dismiss***

47 C.F.R. § 64.1200(d)(3) states that a do-not-call request must be honored within a reasonable time from the date such a request is made not to exceed ten (10) business day from receipt of such request. Plaintiffs boldly claim that "[t]he majority view is that there is no safe harbor as Defendant insists, and the question of whether a defendant acted reasonably is a question of fact." [Opposition, p. 11:8-9.] However, in making this statement, Plaintiffs fail to cite any case which states that this is the "majority view" and, notably, fails to cite any Ninth Circuit case, or any published case, which supports their position. Reprise, on the other hand, cited two cases in the Ninth Circuit which support its position that the question of whether Reprise ceased communications with Mr. Philipson within a reasonable time can be decided on the pleadings. *See Crews v. Sun Sols. AZ LLC*, 2024 U.S. Dist. LEXIS 102467 at *13-14 (D. Ariz. June 10, 2024) (stating pursuant to a motion for default judgment that "[b]ecause those messages were sent within a reasonable time (not to exceed 30 days) after Plaintiff made his do-not-call request, they are not actionable under the TCPA"); *Orsatti v. Quicken*

///

*Loans, Inc.*, 2016 U.S. Dist. LEXIS 182873 at *19-20 (C.D. Cal. Sept. 12, 2016) (holding, on a motion to dismiss, the plaintiff failed to state a claim under 64 C.F.R. § 64.1200(d) where it was not alleged that plaintiff received a call more than thirty days after her do-not-call request).

Plaintiffs' attempt to distinguish these cases because the opt-out requests were made orally is unsuccessful, especially where Plaintiffs themselves rely on cases where the opt-out request was made orally. *See Buja v. Novation Capital, LLC*, 2017 U.S. Dist. LEXIS 231500, at * 5 (S.D. Fla. Mar. 30, 2017) ("During a telephone call from Defendants on or about July 1, 2015 ('July 1, 2015 call'), Plaintiff told Defendants to include his name on Defendants' IDNC list"); *Delgado c. Emortage Funding, LLC*, 2021 U.S. Dist. LEXIS 196785, at * 3 (E.D. Mich. Oct. 13, 2021) ("plaintiff states that she informed the caller that she did not want to be called again but that she nonetheless continued to receive calls through May 14"). In addition, 47 C.F.R. § 64.1200(d)(3) does not distinguish between an oral and written request to no longer receive calls and Plaintiffs' attempted distinction is without difference. Further, it is irrelevant that *Simmons v. Charter Communs., Inc.* was decided pursuant to a motion to summary judgment when the court held that the theory of liability "fail[ed] as a matter of law" where, under former 47 C.F.R. § 64.1200(d)(3) prescribing a do-not-call request must be honored within thirty days, the defendant did not call the plaintiff after thirty days of the do-not-call request. *Simmons v. Charter Communs., Inc.*, 222 F. Supp. 3d 121, 126, 130, 140 (D. Conn. 2016).

Mr. Philipson does not allege that Reprise contacted him more than 10 business days after his initial opt-out request. This fact is plainly stated in the SAC [SAC, ¶ 29], and, contrary to Plaintiffs' assertions otherwise, whether or not Reprise ceased communications with Mr. Philipson within a reasonable time can be, and previously has been within the Ninth Circuit, decided on the pleadings. Reprise cannot be held liable for allegedly failing to honor Mr. Philipson's opt-out request because it ceased communications within a reasonable time. Mr. Philipson's TCPA claims against Reprise fail.

**C. *Ms. Furman Consented to the Communications.***

As acknowledged by Plaintiffs, the Ninth Circuit has held that courts "should generally be forgiving of a district court's ruling on the merits of a late-filed Rule 12(b)(6) motion." *Pepper v. Apple Inc. (In re Apple iPhone Antitrust Litig.)*, 846 F.3d 313, 319 (9th Cir. 2017). This forgiving standard

///

should be applied here to consider Reprise's consent argument as to Ms. Furman. From Plaintiffs' original Complaint to the First Amended Complaint ("FAC"), in response to which Reprise raised its consent argument [ECF No. 15], Plaintiffs made significant changes including changing the formatting of the complaints, changing the causes of action, and adding a plaintiff, Mr. Philipson, about whom Plaintiffs alleged "Plaintiff did not opt back into Defendant's text messages after opting out" while failing to make any such allegation as to Ms. Furman. [ECF No. 1 *cf.* ECF No. 8.] Reprise has been, at all times, responding to Plaintiffs' multiple amended complaints and has not brought this motion for any improper purpose or delay. As such, the Ninth Circuit's forgiving standard should be applied here and Reprise's argument should be considered on the merits.

In opposition, Ms. Furman purposefully attempts to confuse the issue of consent. Ms. Furman never alleged that she did not initially consent to receive communications from Reprise. Instead, Ms. Furman's allegations against Reprise are based on her allegedly "opting-out" of communications from Reprise **after** providing consent to be communicated with. [*see generally*, SAC.] Where a plaintiff concedes consent was provided, it is plaintiff's burden to show that that consent was later revoked. *See Hiller v. Money Source Inc.*, 2025 U.S. Dist. LEXIS 86890 at *10 (D. Ariz. May 7, 2025) (when a case hinges on revocation of consent, a plaintiff has conceded that consent was previously granted and "bears the burden of establishing revocation of consent"). Thus, Ms. Furman, conceding that she previously provided consent to Reprise to contact her, must adequately allege that she thereafter revoked that consent – and that she revoked it for all purposes even after re-initiating communications with Reprise. Ms. Furman has failed to do so. To the contrary, the SAC and documents incorporated by reference thereto demonstrate a very limited period of time in which Ms. Furman may have partially revoked her consent for Reprise to communicate with her: the period between the opt-out message and submission of Ms. Furman's completed application (where Ms. Furman re-initiated her communications with Reprise and re-opted into receiving communications from Reprise). Ms. Furman has failed to adequately allege, as is her burden, that she revoked her consent for all purposes, forever, even when she re-initiated communications with Reprise. Thus, Ms. Furman's consent defeats her causes of action against Reprise.

///

Further, even if consent is an affirmative defense and not necessarily an element of a TCPA claim, "[a]n affirmative defense may be considered if the defense is based on undisputed facts or if the basis for the argument appears on the face of the complaint and any materials the court takes judicial notice of." *Nguyen v. Stephens Ins.*, 529 F. Supp. 3d 1047, 1056 (N.D. Cal. 2021). Here, Reprise's consent argument is obvious on the face of the SAC and the documents incorporated by reference thereto.[2] The documents plainly demonstrate that Ms. Furman, after her initial opt-out message, re-initiated communications with Reprise and opted back into receiving those communications. As consent is a full defense to a TCPA claim, Ms. Furman's consent bars her causes of action. *See Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015) (prior express consent is a complete defense to a TCPA claim and "the vast majority of cases to address the issue have held that a telephone customer who provides her number to another party consents to receive calls or texts from that party"); *Brooks v. USAA Fed. Sav. Bank*, 2019 U.S. Dist. LEXIS 223669 at *8 (C.D. Cal. Jan. 10, 2019) (Providing a phone number 'in conjunction with a transaction,' such as a credit card account application, qualifies as releasing that phone number for TCPA purposes").

## III. CONCLUSION

For the reasons set forth herein and in Reprise's Motion to Dismiss, the Second Amended Complaint should dismissed in its entirety without leave to amend.

DATED: May 4, 2026

HINSHAW & CULBERTSON LLP

By: */s/ Justin Penn*
JUSTIN PENN
SARA E. FRANKS
Attorneys for Defendant
SKOPOS FINANCIAL, LLC DBA REPRISE FINANCIAL

[2] Plaintiffs do not dispute that the documents from Reprise should be considered incorporated by reference to the SAC.